ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

DEBRA J GREEN,

             Plaintiff,

   - against -

SCHINDLER ELEVATOR CORPORATION,

             Defendants.
- - - - - - - - - - - - - - - - - - -X

19 Civ. 4677 (LLS)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _9/27/22_

    In this single-count negligence action, Plaintiff Debra Green seeks to recover damages from Defendant Schindler Elevator Company ("Schindler") for injuries allegedly suffered by Green as a result of a June 5, 2017 trip-and-fall accident involving a malfunctioning elevator, which was inspected, maintained, and repaired by Schindler. Schindler moves for summary judgment and dismissal of the action. Dkt. No. 26.

    For the following reasons, Schindler's motion for summary judgment dismissing the claim is granted.

**BACKGROUND**

**I.  Facts**[1]

    Green was employed at all relevant times as a housekeeper by New York-Presbyterian Hospital. Dkt. No. 29 (Def. Rule 56.1 Statement) ¶ 1. On June 5, 2017, upon completing her shift, Green entered an elevator (#MB10 inside of 525 East 68th Street) on the sixth floor. Id. at ¶¶ 1 & 3.  The elevator traveled to the seventh floor, the doors opened, and Green, never looking

_____

[1] Unless otherwise indicated, the following facts are undisputed.

down, proceeded to exit, tripping and falling forward onto the ground and landing on her chest. Id. at ¶ 3.  While still lying on her chest, Green looked back and saw that the elevator had unevenly stopped with the landing floor (misleveled the floor) and was, she claims, four to five inches lower than the floor. Id. at ¶ 4; Dkt. No. 27 Ex. A (Green's Dep.) at 36:17. As a result of her fall, Green alleged she suffered injuries to her left and right shoulders. Dkt. No. 27 Ex. A (Green's Dep.) at 48:4.

Green filled out an accident report for her employer the next day, stating: "When I was ready to get out of the elevator I didn't notice that floor [sic] wasn't even, I trip [sic] and fell flat on the floor on my chest." Id. at ¶ 5.  There is no record that the incident was reported to Schindler at the time of its occurrence and no record of a repair or adjustment to the elevator that was subsequently performed. Dkt. No. 27 Ex. E (Pl. Ex. Rep.) at 2.

Schindler was contracted to exclusively maintain and repair the elevators in the Hospital complex, including the elevator at subject in this dispute. Id. at ¶ 9. Schindler implemented a maintenance control program, in compliance with industry standards, that utilized a check-off chart for each unit to ensure maintenance tasks were performed at least twice a year. Id. at ¶ 11. Schindler alleges that the check-off chart required

its mechanics to conduct periodic inspections to ensure, among other things, that the elevators were leveling properly. Dkt. No. 27 Ex. B (Amundson Dep.) at 57 (Mechanics "would ride the elevator and make sure it should be leveling properly."). In all of the inspections from 2014 through the first half of 2018 the subject elevator was leveling properly. See Dkt. No. 27 Ex. F (Maintenance Task Log). Green testified she never experienced a leveling problem before the June 5, 2017 accident. Dkt. No. 29 ¶ 18.

The last inspection of the elevator occurred on May 6, 2017, one month before the incident. Id. at ¶ 19. The inspection was a Category 1 test and inspection performed in accordance with NYC Building Code Section 8.6 and the ASME A17.1 Safety Code for Elevators and Escalators, and was conducted in front of a fully independent third-party inspection agency. Id.; Dkt. No. 27 Ex. E (Pl. Ex. Rep.) at 2. The inspection revealed four defects with the elevator relating to dirt in the pit, a defective alarm bell, a missing cover on the position indicator, and an inoperative car door restrictor. Id. The elevator operating system was found to be leveling properly. Dkt. No. 29 ¶ 20. The elevator passed the inspection. Dkt. No. 27 Ex. E (Pl. Ex. Rep.) at 2.

Approximately six months before the alleged accident, on November 25, 2016, a report was made to Schindler describing "a

- 3 -

condition where the elevator is mis-leveled and has run on the final down limit switch." Dkt. No. 35 Ex. B (Def. Ex. Rep.) at 5. On December 3, 2016, a single repair record indicates that Schindler was "working on leveling prob[lem] [sic]." Dkt. No. 27 Ex. G; Dkt. No. 29 (Def.'s Rule 56.1 Statement) ¶ 16. Subsequently, and during the ensuing six-month period before the accident, Schindler did not receive any complaints of the elevator misleveling. Dkt. No. 29 ¶ 17.

At the time of the accident, the elevator was approximately thirty-one years old and was beyond the typical lifespan of a serviceable elevator. Id. at ¶ 13. To control the motion and leveling of the elevator, the elevator used a Ward Leonard DC drive system, a design from the 1950s that is obsolete. Dkt. No. 27 Ex. E (Def. Ex. Rep.) at 3. On three occasions prior to the accident, Schindler submitted proposals to the Hospital to modernize the elevators, and modernization work for the subject elevator was scheduled to proceed in 2020. Dkt. No. 29 at ¶¶ 14 & 15.

## II.   Procedural Posture

Green filed a complaint against Schindler in the Supreme Court of the State of New York, County of New York, on February 1, 2018. On May 22, 2019, Schindler removed the case to this Court based on diversity jurisdiction.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Green is a resident of the County of New York, who seeks damages totaling $2,000,000, from Schindler, a Delaware corporation with its principal place of business in New Jersey. Dkt. No. 7.

**III. Claims**

Green alleges that she was injured because the elevator misleveled with the landing floor causing her to trip and fall upon exiting. She asserts Schindler, as the maintainer of the elevator, is liable for negligence for causing the elevator to be in a dangerous condition and failing to maintain it in a reasonably safe condition.

Schindler asserts it is entitled to summary judgment dismissing Green's negligence claim because there is no claim Schindler caused the defect resulting in the misleveling or was aware of any misleveling problem, and plaintiff cannot offer specific evidence that Schindler failed to use reasonable care in the maintenance of the elevator.

**DISCUSSION**

I.   **Applicable Law**

a. **Federal Rules of Civil Procedure Rule 56**

Summary judgment is warranted if, based upon admissible evidence, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, summary judgment is appropriate where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011).

District courts are not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F.3d 158, 162 (2d Cir. 2006) (quoting Anderson, 477 U.S. at 249). In making that determination, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Upon such a showing, the non-moving party must set forth "specific facts showing that there is a genuine issue

for trial." Anderson, 477 U.S. at 249 (internal quotation marks
and citation omitted).  "A party may not rely on mere
speculation or conjecture as to the true nature of the facts to
overcome a motion for summary judgment.... Mere conclusory
allegations or denials ... cannot by themselves create a genuine
issue of material fact where none would otherwise exist." Hicks
v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation
marks, citation, and brackets omitted). Summary judgment may be
granted if the evidence presented by the non-moving party "is
merely colorable, or is not significantly probative," Anderson,
477 U.S. at 249-50, or where the non-movant has no evidentiary
support for an essential element on which it bears the burden of
proof, Celotex Corp., 477 U.S. at 322-23.

**b. Local Civil Rule 56.1**

Under this Court's rules, a party moving for summary
judgment under Rule 56 of the Federal Rules of Civil Procedure
must submit "a separate, short and concise statement, in
numbered paragraphs, of the material facts as to which the
moving party contends there is no genuine issue to be tried."
Local Civ. R. 56.1(a). If the opposing party fails to respond to
the moving party's statement, with its own statement of
correspondingly numbered paragraphs, then the material facts
contained in the moving party's statement "will be deemed to be

admitted" as a matter of law. See Local Civ. R. 56.1(c);

Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

But the local rule is not a mechanism that can be used to
contort the record. If the record does not support material
facts in the defendant's Rule 56.1 statement, then "even though
plaintiff's Rule 56.1 counter-statement failed to specifically
controvert these assertions, the unsupported assertions must
nonetheless be disregarded and the record independently
reviewed." Giannullo, 322 F.3d at 140.

The local rule does not absolve the moving party from its
burden of establishing that it is entitled to judgment as a
matter of law.  Holtz v. Rockefeller & Co., 258 F.3d 62, 73-74
(2d Cir. 2001). Summary judgment may only be granted where "the
Court is satisfied that the undisputed facts, as supported by
the record, 'show that the [movant] is entitled to a judgment as
a matter of law.'" Ulerio v. Schindler Elevator Corp., No. 12
CIV. 01496 DF, 2014 WL 1303710, at *3 (S.D.N.Y. Mar. 26, 2014)
(quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)
(alteration in original)).

In this case, Schindler properly submitted a Rule 56.1
statement in support of its motion for summary judgment. Dkt.
No. 29. However, Green did not submit a corresponding numbered
statement to contest any material facts. Therefore, the facts as
stated in Schindler's Rule 56.1 statement, to the extent that

they are supported by the underlying record, are deemed admitted
for the purposes of deciding this motion.

## II.  Negligence

### a. Legal Standards

To prove a claim of negligence under New York law,[2] a
plaintiff must establish by a preponderance of evidence that:
(1) the defendant owed a duty to the plaintiff; (2) the
defendant breached that duty; (3) the defendant's breach caused
the plaintiff's injuries; and (4) the plaintiff suffered
damages. See, e.g., Ulerio, 2014 WL 1303710, at *3; Meade v.
Otis Elevator Co., No. 15-CV-04822-LTS-HBP, 2017 WL 6509259, at
*6 (S.D.N.Y. Dec. 18, 2017).

If an elevator company has agreed to maintain an elevator
in safe working condition, "it owes a duty of maintenance and
can be liable to a passenger for 'failure to correct conditions
of which it had knowledge,' or 'failure to use reasonable care
to discover and correct a condition which it ought to have
found.'" Ulerio, 2014 WL 1303710, at *4 (quoting Rogers v.
Dorchester Assoc, 32 N.Y.2d 553, 559 (1973)). Such an elevator
company may establish prima facie entitlement to summary
judgment by presenting "competent evidence in admissible form

---

[2] New York substantive law applies to this diversity action. Shoifet v. New
York C. R. Co., 265 F.2d 208, 208 (2d Cir. 1959) ("As federal jurisdiction is
based on diversity of citizenship, and the accident occurred in New York,
that substantive aspects of the case are governed by New York law.").

showing that the elevator was functioning properly before and
after the accident, and that, even if a defect existed, the
company did not have actual or constructive notice of any such
defect.'" Id.; Lasser v. Northrop Grumman Corp., 865 N.Y.S.2d
301, 302 (2d Dep't 2008)).

Once the defendant elevator company makes that prima facie
showing, "the plaintiff must come forward with evidence capable
of showing that the defendant either: '(1) created the defect;
or (2) had actual or constructive notice of the defect.'" Meade,
2017 WL 6509259, at *6 (citation omitted); Skidd v. JW Marriot
Hotels & Resorts, No. 06 Civ. 1554(DAB), 2010 WL 2834890, at *4
(S.D.N.Y. July 8, 2010).

To constitute constructive notice, a defect "must be
visible and apparent and it must exist for a sufficient length
of time prior to the accident to permit the defendant's
employees to discover and remedy it." Skidd, 2010 WL 2834890, at
*5; Gordon v. American Museum of Natural History, 492 N.E.2d
774, 775 (1986). If a defendant has "actual knowledge of a
particular ongoing and recurring hazardous condition they may be
charged with constructive notice of each specific reoccurrence
of that condition." Willis v. Galileo Cortlandt, LLC, 964
N.Y.S.2d 576, 577 (2d Dep't 2013); Ulerio, 2014 WL 1303710, at
*4.

**b. Application**

The only element in dispute is whether Schindler breached its duty to maintain the elevator in a safe working condition. The Court finds it did not.

There is no evidence that Schindler created a defect in the elevator or had actual or constructive notice of it. Schindler has put forward competent evidence showing the elevator was functioning properly before and after the incident, and that even if a defect existed, it did not have constructive notice of the deficiency. Schindler's service records show that there was no report of an issue with the stopping or leveling of the elevator for the six months prior to the accident. Dkt. No. 29 ¶ 17; See Santoni v. Bertelsmann Prop., Inc., 21 A.D.3d 712, 713-14, 800 N.Y.S.2d 676 (1st Dep't 2005) ("With respect to lack of notice, defendants demonstrated, through competent evidence, that no other complaints, calls, shutdowns or problems regarding the subject elevator occurred the day before, the day of, or the day after the incident."); Meade, 2017 WL 6509259, at *6 ("Defendant's service records spanning the relevant time period, which Defendant asserts 'reflect all procedures, repairs and callbacks' for the Subject Elevator, do not reflect any 'leveling complaints in the year prior, and [for] four days after April 20, 2012.'"). Green herself reported to have never experienced any prior issues with the leveling of the elevator.

Dkt. No. 29 ¶ 18. Nor were there any reports of misleveling after Green's accident.

Green's own expert acknowledged in his deposition that nothing in the records indicates that the failure of the leveling mechanism of the elevator was imminent. See Dkt. No. 17 Ex. C (Pl. Ex. Dep.) at 137-38; 200-02 (confirming that it is a "fair statement" that "there is nothing in those records that indicates that the failure is imminent of the leveling function of this elevator"); 205-06. In fact, Schindler put forward evidence in the form of the Category 1 test that the elevator's leveling mechanism was functioning properly one month before the accident. Dkt. No. 29 ¶ 20; See Isaac v. 1515 Macombs, LLC, 84 A.D.3d 457, 458, 922 N.Y.S.2d 354 (1st Dep't 2011) ("Defendants demonstrated their prima facie entitlement to summary judgment" when, in part, "the elevators had been inspected by the Department of Buildings on October 26, 2005, about a week before the accident, and passed inspection."); Ezzard v. One E. River Place Realty Co., LLC, 129 A.D.3d 159, 162, 8 N.Y.S.3d 195 (1st Dep't 2015) (granting summary judgment when, in part, "the elevator was found to be level during City and Local Law No. 10 inspections performed approximately three weeks and two weeks before the accident"). Similarly, the records show that none of the regular maintenance inspections conducted by Schindler revealed any issues with the leveling mechanism. Dkt. No. 27 Ex.

F. Accordingly, Schindler has presented competent evidence in admissible form showing that the elevator was functioning properly before and after the accident and that it had no notice of any alleged defect.

In light of Schindler's prima facie showing, Green must present evidence that Schindler created the defeat or had actual or constructive notice of it. Green argues that a record from 11/25/2016 and the repair log entry from 12/3/2016 establish constructive notice sufficient to have required Schindler to "put the elevator out of service and perform further inspection." Dkt. No. 34 (Pl. Opp.) at 4.

However, the 12/3/2016 report is evidence to the contrary. It shows that Schindler did conduct an inspection and the fact that no additional reports of misleveling were made after then suggests that Schindler remedied the issue.

Green's expert characterizes the 11/25/2016 report as describing a condition where the "elevator was misleveled and has run on the final down limit switch causing it to remain out of service." Dkt. No. 35 Ex. B (Pl. Ex. Rep.) at 5. However, there is insufficient evidence to support that there was a defect with the leveling mechanism on that date. The Schindler mechanic who responded to the report at the time found that the defect was caused by the elevator being "overloaded" as opposed to an error with the leveling mechanism. Id. Green's expert

himself admitted that there is no evidence that the error in this occurrence was caused by a failure of the leveling system. See Dkt. No. 27 Ex. C (Pl. Ex. Dep.) at 133-36. Regardless of the cause of the November incident, the record indicates that Schindler responded to the issue and made sufficient repairs on 12/03/2016 such that no other issues with misleveling were reported until Green's accident.

Green's expert also originally argued that Schindler had constructive notice because the Category 1 test disclosed a non-working door restrictor and, if the restrictor had been functioning properly, the accident would not have occurred. See Dkt. No. 35 Ex. B (Pls. Ex. Rep.) at 7. However, in his deposition, the expert withdrew that opinion stating that he had been "under the mistaken belief" that the door restrictor could have been adjusted to prevent the door from opening when the elevator cab was misleveled with the landing floor by four or more inches. Dkt. No. 27 Ex. C (Pl. Ex. Dep.) at 114-15. In fact, it could not.

Finally, Green's expert argues that Schindler was negligent because it "failed to devote sufficient time to the preventative maintenance of the subject elevator." Dkt. No. 35 Ex. B (Pls. Ex. Rep.) at 7-8. The expert based that opinion on his review of the maintenance check chart, which in his view, "indicated maintenance tasks to be done all of which were either once or

twice a year. Hardly appropriate for an elevator that is over 30 years old." Id. at 6. "It stands to reason," he added, "that an aged obsolete elevator that's being heavily used is going to require a greater level of attention to keep it running than is a brand new elevator." Dkt. No. 27 Ex. C (Pl. Ex. Dep.) at 200.

But Green's expert's testimony is a conclusory opinion and "mere speculation and failed to raise a triable issue of fact sufficient to defeat Defendants' motion." Skidd v. JW Marriot Hotels & Resorts, No. 06 CIV. 1554 (DAB), 2010 WL 2834890, at *5 (S.D.N.Y. July 8, 2010) (holding no triable issue of fact created by expert's testimony that "Defendant Otis Elevator's failure to perform preventative maintenance led to wear and tear in the selector tape, which ultimately led to the elevator stop"); Hernandez v. Pace Elevator Inc., 69 A.D.3d 493, 894, 894 N.Y.S.2d 382 (1st Dep't 2010) (an expert's affidavit that is "vague, conclusory and factually unsupported" fails to raise an issue of fact as to the elevator company's liability). Green's expert does not point to any evidence that shows a lack of preventative maintenance contributed to the misleveling of the elevator.

Green attempts to bolster the opinion of her expert and support the argument that Schindler was negligent based on its lack of maintenance by pointing to the fact that Schindler recommended to the Hospital that the elevator, including its

leveling device, be modernized. However, the modernization proposals do not support a finding that Schindler was negligent. See Isaac, 84 A.D.3d at 459 ("Nor is actual or constructive notice established by the mere fact that modernization proposals of BP Elevator of March 18, 2005 and April 11, 2005 included replacement of the elevator's leveling device.").

Green thus fails to establish that Schindler breached a duty owed to her, which is necessary to prove a common law negligence claim. Accordingly, Schindler is entitled to summary judgment dismissing Green's claim to the extent it is brought under a traditional negligence theory, "as there is no evidence in the record from which Plaintiff can prove that Defendant had actual or constructive notice of any leveling defect in the Subject Elevator." Meade, 2017 WL 6509259, at *7.

## III. Res Ipsa

Green could still prevail on her claim of negligence under the doctrine of res ipsa loquitor. That doctrine "does not state a separate theory on which a plaintiff may recover for injury," but rather "amounts to nothing more than 'a common-sense appraisal of the probative value of circumstantial evidence.'" Abbott v. Page Airways, Inc., 23 N.Y.2d 502, 512, 245 N.E.2d 388 (1969) (quoting Galbraith v. Busch, 267 N.Y. 230, 235, 196 N.E. 36 (1935)). In circumstances where "it is not known exactly who or what caused the accident," Manhattan by Sail, Inc. v. Tagle,

873 F.3d 177, 183 (2d Cir. 2017), negligence may be inferred "'merely from the happening of an event and the defendant's relation to it,'" Ulerio, 2014 WL 1303710, at *4 (quoting Kambat v. St. Francis Hosp., 678 N.E.2d 456, 458 (1997)).

"Under that doctrine, a fact-finder may infer negligence merely from the happening of the event that caused the harm if: (1) the event is of a type that ordinarily would not occur in the absence of negligence; (2) it is caused by an agency or instrumentality under the exclusive control of the party charged with negligence; and (3) it is not due to any voluntary action or contribution on the part of injured party [sic]." Manhattan by Sail, Inc., 873 F.3d at 180.

Showing that an event is of a type that ordinarily would not occur in the absence of negligence does not require the plaintiff "to eliminate with certainty all other possible causes or inferences." Id. at 181. But a plaintiff "must show that the incident in question probably resulted from the negligence of the defendant." Skidd, 2010 WL 2834890, at *3. In other words, the plaintiff must show that the evidence supports "a rational basis for concluding that it is more likely than not that the injury was caused by defendant's negligence." Ezzard, 129 A.D.3d at 164.

Green has not demonstrated that the alleged misleveling that she claims caused her injuries was an incident of a type

that ordinarily would not occur in the absence of negligence. Green's expert states that "an elevator does not operate in this manner in its normal mode without negligence in its maintenance and repair." Dkt. No. 35 Ex. B (Pls. Ex. Rep.) at 7. However, Green's expert does not point to any evidence to support his theory other than his unsubstantiated opinion.  He does not point to any mechanism of the elevator that was malfunctioning and in need of additional maintenance or repair. Schindler's expert acknowledges that the elevator is "well past its serviceable lifespan and in need of a modernization" but that is not evidence that performance of additional maintenance would have prevented the elevator from misleveling. Dkt. No. 27 Ex. E at 6.

"Plaintiff cannot rely on res ipsa loquitur without pointing to some evidence that his theory was probably the correct one," which Green does not. Skidd, 2010 WL 2834890, at *4. Accordingly, Green's attempt to proceed with a theory of res ipsa loquitur fails. See Kachele v. Nouveau Elevator Indus., Inc., 186 A.D.3d 1626, 1627 (2d Dep't 2020) (holding in an elevator misleveling case that the "plaintiff may not rely on the doctrine of res ipsa loquitur because he failed to establish that the accident was one that would not ordinarily occur in the absence of someone's negligence"); Palladino v. New York City Hous. Auth., 173 A.D.3d 1196, 1197 (2d Dep't 2019) (same);

- 18 -

Daconta v. Otis Elevator Co., 165 A.D.3d 753, 754 (2d Dep't
2018) (same).

## CONCLUSION

For the reasons set forth above, Schindler's motion for
summary judgment dismissing Green's claim of negligence based on
ordinary negligence and res ipsa loquitur is granted.

Green's complaint is dismissed in its entirety.

The clerk is directed to close the docket in this case.

So Ordered.

Dated:  New York, New York
        September 27, 2022

                                    _____ Louis L. Stanton
                                    LOUIS L. STANTON
                                      U.S.D.J.